**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ERNESTINA PEREZ-SUAREZ,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | |
| **MARKWAYNE MULLIN,** | § | |
| Secretary of the U.S. Department of | § | |
| Homeland Security; | § | |
| **MARY DE ANDA YBARRA,** | § | |
| Field Operations Director of the El Paso | § | **EP-25-CV-00680-DCG** |
| Field Office of U.S. Immigration and | § | |
| Customs Enforcement; | § | |
| **TODD LYONS,** | § | |
| Acting Director of U.S. Immigration and | § | |
| Customs Enforcement; and | § | |
| **TODD BLANCHE,** | § | |
| Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| *Respondents.* | § | |
| | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ernestina Perez-Suarez ("Petitioner") challenges her ongoing detention by United States Immigration and Customs Enforcement ("ICE") and seeks a writ of habeas corpus under 28 U.S.C. § 2241.[1] Federal Respondents ("Respondents") oppose the Petition.[2]

For the following reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) and **ORDERS** Respondents to either give Petitioner a bond hearing or release Petitioner from custody.

---

[1] *See generally* Pet., ECF No. 1.

[2] *See generally* Resp., ECF No. 7.

I.      **Background**

A.      **Factual History**

Petitioner is a citizen of Mexico who entered the United States without inspection in 1997.[3] On October 17, 2025, immigration authorities detained Petitioner in Florida.[4] The Government issued a Notice to Appear ("NTA") charging Petitioner as "an alien present in the United States who has not been admitted or paroled" and thus subject to removal.[5]

Petitioner is currently detained at Camp East Montana in El Paso, Texas.[6] As far as the record reveals, the Government has neither (1) given Petitioner a substantive bond hearing;[7] nor (2) entered a final administrative order of removal against Petitioner.[8]

B.      **Procedural History**

On December 17, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in accordance with 28 U.S.C. § 2241.[9] Petitioner claims that her ongoing detention violates the

---

[3] Pet. at 3.

[4] *Id.* at 3.

[5] *Id.* at 23. An NTA is a charging document that "initiates a proceeding before an Immigration Judge." *See* 8 C.F.R. § 1003.13; *id.* § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

[6] *Id*. at 3.

[7] *Id.* at 18.

[8] In accordance with the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the parties were required to tell the Court if and when (1) "the Government grants the petitioner a custody redetermination hearing" and (2) "the Government issues an order of removal against the petitioner." A copy of that Standing Order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2026/04/Standing-Order-Immigration-Case-Updates-DCG.pdf.

Neither party has filed a status update with that information in it, so the Court proceeds under the assumption that no final order of removal exists and that Petitioner has not received a bond hearing.

[9] Pet. at 1.

Fifth Amendment to the United States Constitution.[10] Respondents timely filed a Response and oppose the Petition.[11]

## II.    **Legal Standard**

The United States Constitution guarantees that, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[12] Detainees bear the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[13]

Under 28 U.S.C. § 2243, the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require."[14] Because "the facts essential to consideration of the constitutional issue are already before the court," it is unnecessary to hold an evidentiary hearing to decide the Petition; the Court may instead decide the Petition on the papers.[15]

---

[10] *Id.* at 19.

Because the Court concludes below that Petitioner is entitled to habeas relief under the Fifth Amendment, the Court need not address other claims contained in the Petition. *See, e.g.*, *Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises."); *Trotter v. Warden La. State Penitentiary*, 718 F. Supp. 2d 746, 756 (W.D. La. 2010) ("Petitioner is entitled to habeas relief on the claim. The court need not reach the other claims raised by Petitioner." (citation modified)).

[11] *See generally* Resp.

[12] *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).

[13] *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," with exceptions not relevant here, "he is in custody in violation of the Constitution or laws or treaties of the United States." (citation modified)).

Because habeas proceedings are civil in nature, each petitioner "must satisfy his burden of proof by a preponderance of the evidence." *See, e.g.*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[14] *See* 28 U.S.C. § 2243.

[15] *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

III.    **Discussion**

A.      **Jurisdiction**

The Court must determine whether it has subject matter jurisdiction.[16] Congress has divested district courts of jurisdiction to adjudicate certain immigration-related claims that might otherwise be cognizable under 28 U.S.C. § 2241.[17] The Court has already determined that it has subject matter jurisdiction to resolve analogous cases.[18] For those same reasons, the Court retains jurisdiction over this Petition.

B.      **Administrative Exhaustion**

Generally speaking, "[a] person seeking habeas relief must first exhaust available administrative remedies."[19] As this Court has previously explained, however, "when a

---

[16] *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.").

[17] *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Bouarfa v. Mayorkas*, 604 U.S. 6, 18 (2024).

[18] *See, e.g.*, *Alvarado Luna v. Warden*, 3:25-CV-00565-DCG, 2025 WL 3787494, at *6–7 (W.D. Tex. Dec. 29, 2025), *overruled in part by Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Zamudio Sanchez v. Noem*, No. 3:25-CV-00403-DCG, 2026 WL 596133, at *6–7 (W.D. Tex. Mar. 2, 2026); *Gomes v. Grant*, No. 3:25-CV-00663-DCG, 2026 WL 1179617, at *2 (W.D. Tex. Apr. 21, 2026); Memorandum Opinion and Order Granting Petition for Writ of Habeas Corpus, *Goliakov v. Noem*, No. 3:25-CV-00613 (W.D. Tex. May 1, 2026), ECF No. 16 [hereinafter "Goliakov"].

[19] *See Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018) (citing *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) (per curiam)).

petitioner's due process claim does not assert a procedural error correctable by the BIA, it is not subject to an exhaustion requirement."[20]

Petitioner asks the Court to resolve a constitutional question.[21] Because "neither the Immigration Judge nor [the BIA] may rule on the constitutionality of the statutes that [they] administer,"[22] administrative exhaustion is not a prerequisite to the Court's review.

### C.    Immigration and Nationality Act

The Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi* appears to foreclose the possibility that Petitioner is detained under 8 U.S.C. § 1226(a) (and thus *eligible* for a bond hearing).[23] Accordingly, the appropriate detention authority must be § 1225(b)(1) or §

---

[20] *See Lopez De Jesus v. INS*, 312 F.3d 155, 162 n.47 (5th Cir. 2002) (first citing *Anwar v. INS*, 116 F.3d 140, 144 & n. 4 (5th Cir. 1997); and then citing *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993)).

[21] *See infra* Section III.D.

[22] *See In re Rodriguez-Carrillo*, 22 I. & N. Dec. 1031, 1035 (BIA 1999).

[23] In *Buenrostro-Mendez*, the Fifth Circuit suggested that the Government could apply either § 1226 or § 1225 to certain "aliens in the United States." *Buenrostro-Mendez*, 166 F.4th at 505 ("It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens."). Assuming (without deciding) that the Government could detain Petitioner under either authority, nothing suggests that the Government opted to detain her under § 1226. *See id.* at 498–508; NTA at 2.

1225(b)(2). [24] The Court need not decide which paragraph applies, because neither one affords Petitioner the opportunity for a bond hearing.[25]

Because "the Constitution, not statutes, determine the minimum procedures that due process requires,"[26] *Buenrostro-Mendez* does not control whether Respondents are detaining Petitioner in violation of the Constitution.[27] Thus, Petitioner could obtain a bond hearing if the Constitution requires the Government to provide one.

---

[24] Both paragraphs direct the Government to detain an applicant for admission "throughout the completion of applicable proceedings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

A noncitizen is an applicant for admission if he (1) is present in the United States but has not been admitted; or (2) arrives in the United States. *See* 8 U.S.C. § 1225(a)(1). *See also id.* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); *id.* § 1182(d)(5)(A) (explaining that "parole of such alien *shall not* be regarded as an admission of the alien" (emphasis added)).

Because Petitioner hasn't been legally admitted to the United States, she is an applicant for admission. *See generally* Pet.

[25] Neither paragraph "says anything whatsoever about bond hearings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297). Thus, the Fifth Circuit concluded that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." *Id.* at 500.

Moreover, because neither of these statutory authorities entitle aliens to a bond hearing, the Court has no choice but to consider whether the Constitution does require that procedure. *See, e.g.*, *Louisiana v. Pub. Invs., Inc.*, 35 F.3d 216, 219–20 (5th Cir. 1994) ("When presented with two grounds for resolving a case, one statutory and the other constitutional in nature, we will address the statutory ground first and dispose of the case solely on that basis if possible.").

[26] *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020) ("[T]he Constitution, not statutes, determine the minimum procedures that due process requires.").

[27] *See, e.g.*, *Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026) ("*Buenrostro-Mendez* has no bearing on this Court's determination of whether a habeas petitioner is being detained in violation of her constitutional right to procedural due process." (citation modified)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee." (citation modified));

### D. Due Process Clause of the Fifth Amendment

In *Mathews v. Eldridge*, the Supreme Court articulated a three-part balancing test to determine whether a procedural due process violation has occurred.[28] The factors are as follows:

1) "The *private interest* that will be affected by the official action";

2) "The *risk* of an erroneous deprivation of such interest through the procedures used, and the *probable value*, if any, of additional or substitute procedural safeguards"; and

3) "The *Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[29]

Applying those factors here, this case is materially indistinguishable from others where this Court has found due process violations under *Mathews*:

1) Petitioner possesses a cognizable interest in her physical freedom because she lived at liberty in the United States for 28 years and has family and community ties to the country;[30] and

2) A bond hearing would mitigate "the risk of an erroneous deprivation of [Petitioner's liberty] interest;"[31] and

---

[28] *Mathews*, 424 U.S. at 334–35.

[29] *Id.* at 335 (emphases added).

[30] *See* Pet. at 3, 16.

*Cf. Martinez-Santos v. Mullin*, 3:25-CV-00655-DCG, 2026 WL 1257459, at *4 (W.D. Tex. May 6, 2026) ("Petitioner possesses a cognizable interest in his physical freedom because he lived at liberty in the United States for more than two years and has family and community ties to the country."); *Zamudio Sanchez*, 2026 WL 596133, at *12 (concluding the same for petitioner who had lived in the United States for 30 years); *Gomes*, 2026 WL 1179617, at *8 (22 years); *Melendez Rivera v. Bondi*, 3:25-CV-00646-DCG, 2026 WL 1231224, at *4 (20 years).

[31] *Mathews*, 424 U.S. at 335; *see also, e.g.*, *Black v. Almodovar*, 156 F.4th 171, 194 (2d Cir. 2025) ("In the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention." (citation modified)); *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States*, 463 U.S. 354, 368 (1983))).

3) The burden of administering such a hearing would infringe minimally on the Government's interest in using detention to effectuate removal proceedings.[32]

The Court therefore finds that, by detaining Petitioner without the opportunity for a bond hearing, Respondents have deprived Petitioner of her right to procedural due process under the Fifth Amendment.[33]

### E.    Relief

#### 1.    Bond Hearing

Rather than order immediate release from custody, the majority of courts appear to require a bond hearing before an immigration judge ("IJ") for immigration detainees who have been detained in violation of due process.[34] "[G]iven that the Court has found a *procedural* due process violation,"[35] the Court agrees that a bond hearing is an appropriate remedy.[36] That said,

---

[32] *Compare Singh v. Andrews*, No. 25-CV-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."), *with Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day").

[33] This Court has not yet considered whether the nature and duration of immigration detention (as opposed to the interest-balancing facilitated by *Mathews*) would provide a distinct basis for relief under the Due Process Clause. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (requiring "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed"); *see also Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (applying *Jackson* in the immigration detention context).

Because the Court already determined that Petitioner is entitled to relief under *Mathews*, the Court need not decide whether she would be entitled to identical relief under *Jackson*.

[34] *See, e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (collecting cases).

[35] *See id.* at 687.

[36] *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts have "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775))

the Court will order that a bond hearing be completed within a short window.[37] If Respondents

do not provide the individualized hearing as required by this Order, they must release Petitioner

under reasonable conditions of supervision.[38]

## IV.     **Conclusion**

For these reasons, the Court determines that (1) it has jurisdiction over this matter; and

(2) Petitioner has established a violation of the Due Process Clause of the Fifth Amendment as

applied to her.

The Court therefore **GRANTS** Petitioner Ernestina Perez-Suarez's "Petition for Writ of

Habeas Corpus" (ECF No. 1).

The Court **ORDERS** Respondents to, by **Monday, June 8, 2026**:

1) provide Petitioner with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk justifying Petitioner's continued detention;[39] or

2) release Petitioner from custody under reasonable conditions of supervision.

---

[37] *Cf. Velasquez Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at \*9 (D.N.M. Sept. 17, 2025).

[38] *See* 8 U.S.C. § 1231(a)(3) (requiring that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

[39] To secure their release at a bond hearing, noncitizens typically bear the burden of demonstrating that they are neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8); *id.* § 1003.19(h)(3).

Where bond hearings are ordered as a habeas remedy, however, the burden shifts to the Government to show, by clear and convincing evidence, that the detainee poses a danger or flight risk. *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (citing *Velasco Lopez*, 978 F.3d 842, 855 (2d Cir. 2020)).

- 10 -

The Court further **ORDERS** Respondents to **NOTIFY** Petitioner and Petitioner's counsel **at least 24 hours** before the hearing or release (including the date, time, and location).

The Court further **ORDERS** Respondents to **FILE** an advisory with the Court **no later than Thursday, June 11, 2026**, containing (1) detailed reasons for the bond hearing decision; or (2) confirmation of Petitioner's release.

In the event Petitioner is released, the Court **ORDERS** Respondents to **RETURN** Petitioner's property to her (including identification, immigration papers, cell phone, money, keys, and any other personal effects).

      **So ORDERED and SIGNED this 1st day of June 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**